Plaintiff sues to recover workmen's compensation for alleged permanent total disability resulting from injuries sustained in an accident occurring on September 17, 1938, while in the discharge of the duties of his employment with defendant, whose business is hazardous. Coupled with this demand, in the alternative, there is another for a large money judgment based upon tort theory. However, it is now conceded that if plaintiff is entitled to recover at all his right to do so is governed by the Employers' Liability Act of this state. Act No. 20 of 1914, as amended.
Plaintiff alleged that as a result of the accident he suffers from the following injuries which disable him to do work of any reasonable character, to-wit:
"(a) An enlargement of the left kidney with enlargement and dilation of the pyelus, together with a lateral and downward displacement of the left kidney.
"(b) A fracture of the left transverse process of the third lumbar vertebra.
"(c) Traumatic arthritis of the lumbar-sacral and left sacroiliac articulations.
"(d) Marked pain, soreness and tenderness about the region of the kidneys, sides and entire back."
Defendant admits that plaintiff was disabled from the accident until October 31, 1938, on which date he resumed his former work, but that he quit its employ on November 12th following and was to that date paid the amount due him on wage account; that from this date until February 7, 1939, he was paid compensation by defendant at the rate of $7.60 per week and in addition *Page 619 
thereto the sum of $292.34 was paid by it for doctors', hospital and medical charges necessarily incurred in treating plaintiff's injuries; that on February 7, 1939, he had fully recovered from the ill effects of the accident and any disability whatever experienced by him thereafter is not ascribable thereto; that he is suffering only from pyelonephrosis of the left kidney not caused nor aggravated by the accident; that notwithstanding non-liability to plaintiff for compensation on said account, defendant did offer to him, at its expense, subsequent to February 7, 1939, the services of a competent genito-urinary specialist and without just cause be refused to accept the offer; that if he had done so and had followed this physician's advice and treatment he would long ago have fully recovered sound health, etc.
Prior to trial of the merits defendant ruled plaintiff to show cause why he should not submit himself to Dr. D.T. Milam, a genito-urinary specialist in the City of Monroe, Louisiana, for examination of his left kidney, either cystoscopic or by intravenous pyelogram, in order to determine the condition of that organ, it having previously been ascertained by Dr. Milam that the kidney was diseased. Answering the rule, plaintiff pleaded that the sort of examinations to which he was urged to submit were not reasonable within the meaning and contemplation of the Employers' Liability Act. Without hearing testimony on the issue, the lower court ordered all proceedings in the case suspended until plaintiff did submit to one of the two examinations mentioned. From this order appeal was prosecuted by plaintiff to this court. The order was annulled and set aside and the case was remanded for further proceedings in keeping with law and views expressed in the court's opinion. 5 So.2d 160, 162.
In the course of said opinion it is said:
"A determination of the issue concerning the reasonableness of the proposed kidney examination is important as and to the extent hereafter shown. If it appears, after and only after evidence regarding the issue is received, that the desired examination is unreasonable, plaintiff cannot be penalized in any manner for refusing to submit to it. Should the proof, however, reveal such examination to be a reasonable one, and he still does not permit its being conducted, he will be penalized, but only in this manner, by prohibiting his introduction of evidence on the trial of the merits to substantiate his claim for kidney injury and disability. The penalty provided for by the provisions of Section 10 of the compensation statute can not be imposed, in the event of this last mentioned refusal, in view of his charging in the petition other severe injuries, capable of producing the permanent and total disability asserted, for which he has already willingly submitted to a requested examination."
After hearing testimony relative to the reasonableness of either of the examinations sought by defendant, the lower court ruled that plaintiff should not be required to submit to a cystoscopic examination but ordered him to submit to an examination by intravenous pyelogram. He was ordered to report to Dr. Milam for such examination on or before March 5, 1942. The court's order expressly provided that failure to comply therewith would not prevent further prosecution of the case by him, "but only (would affect) the character of testimony adduced on the trial", which meant that no testimony would be received in support of the allegation that disability was caused in whole or part from injury to the left kidney.
Plaintiff persisted in his refusal to submit to the examination ordered by the court, and the case was thereafter tried on the merits under the restrictions above mentioned. There was judgment for plaintiff decreeing him totally disabled and awarding him compensation at the rate of $8.37 per week for not more than four hundred weeks, less payments previously made, aggregating $129.20. Defendant appealed.
Appellee does not complain of the court's ruling that an examination of his kidneys by intravenous pyelogram should be allowed. We concur with the court's ruling. Defendant is entitled to have this done by competent physicians in order to intelligently prepare its defense to that phase of the demand charging disability to injury of this organ. The undisputed testimony shows that such an examination is made without any danger whatever to life and is practically free of pain. It is done by simply injecting a dye into the veins which, after reaching the kidneys, is excreted. While the kidneys are thus affected, X-rays are made of them which are supposed to reflect any pathology existing therein. *Page 620 
Appellant does not complain of the court's ruling that plaintiff should not be ordered to submit to a cystoscopic examination.
The lower court assigned written reasons to support the judgment rendered on the merits from which we quote the following:
"In view of all of the testimony in this case, the Court is absolutely convinced that this plaintiff is disabled, — totally disabled — to do any work of a reasonable character and, as the only kind of work he could do is physical labor, would mean a total disability to work at all. Furthermore, in view of the testimony, the Court feels that there is nothing to show that this condition will change, as it has continued over a period of nearly four years. However, the Court is thoroughly convinced that while this man is totally disabled, and disabled as a result of the injury he received in this accident, that the disability flows, not from any injury to a bone but from injury that he received to this kidney or other internal injury; * * *".
We fully agree with these conclusions in two respects, to-wit:
That plaintiff at date of trial was totally disabled to perform work of any reasonable character, and that such disability is not the result, directly or indirectly of the fracture of any bones of his back. That there was injury to the third lumbar vertebra and probably to the processes thereon or thereabout is not seriously questioned, but the decided weight of the medical testimony, supported by X-ray pictures, proves that these injuries have healed satisfactorily, leaving no pathological aftermath sufficient to cause disability.
The testimony discloses that there existed a limited amount of arthritis on some of the lumbar vertebrae, insufficient however, to produce disability. The medical, testimony convinces us that arthritis was present when plaintiff was injured and has possibly progressively increased since that time. The presence of the quantity revealed by the X-rays does not exceed that which is frequently found on the spines of laborers of plaintiff's age. This leaves as the possible cause of the disability the alleged injury to the left kidney and soreness and tenderness in the region thereof.
In keeping with the judgment of this court no testimony whatever concerning the kidney's past or present condition was offered or introduced when the case was tried on its merits. In view of plaintiff's persistence in refusal to submit to the intravenous pyelogram examination, such testimony was not admissible.
The lower court largely, if not exclusively, based the conclusion that the disability results from injury to the kidney and other internal injuries upon the testimony of Dr. Milam adduced on trial of the rule. That testimony is not a part of the record pertaining to the merits and should not have been considered in determining the question of disability. To do so would virtually nullify the court's ruling that if plaintiff should continue to refuse to allow the examination, held to be reasonable, testimony to support the allegations that disability resulted in whole or part from injury to the kidney would be excluded. If such testimony is considered plaintiff would therefrom be the beneficiary indirectly of that which, because of his obstinancy, it has been decided he is not entitled to directly.
Defendant is entitled to know and the courts are entitled to know, if medical science is able to determine, the exact condition of plaintiff's kidney at the present time; that is, if it suffers from trauma or disease or both. They are entitled to know, if ascertainable, whether the kidney's condition may be cured by competent medical treatment. If curable by such treatment or by operation deemed to be reasonable, and defendant is willing to defray the expenses of such treatment or operation, then it is the obvious duty of plaintiff to lend his cooperation to the end that he may be restored to sound health and defendant be relieved from unjust payment of compensation to him.
Plaintiff stands to lose nothing he is entitled to by submitting to the examination ordered by the court. If the kidney still is suffering from effects of the accident and the affection is producing the disability, on proving this fact, he will be paid all compensation due him. On the other hand, if the kidney is not causing the disability, or, if causing it, disease unaggravated by the accident and not the effect of trauma, does so, he is not entitled to compensation and should not ask for it.
He should willingly submit to any reasonable examination and treatment in the hope of alleviating his physical condition so that the remaining years of his life may not be merely eked out; especially should this be his attitude when defendant is *Page 621 
willing to bear the attending expenses of the examination and treatment, even though made by a physician or physicians of his selection.
It is well here to state that plaintiff has not sought nor received any medical treatment or attention since January, 1939. It does not appear why he has not sought treatment in one of the splendid Charity Hospitals of the State, there being one in the City of Monroe.
There is no law of this state which warrants a court in forcing a plaintiff in a compensation suit to submit to treatment or operation of any character for which the defendant is willing to pay. The only penalty that can legally be visited upon him because of his refusal to comply with the order of the court to submit to examination is to stop all proceedings in his suit until he does that which for his own protection and physical welfare, he should do.
For the reasons herein assigned, the judgment appealed from is set aside and reversed; this case is again remanded to the lower court for further proceedings to be had only when and after plaintiff has submitted to the examination ordered by the court, and until he complies with said order, it is hereby ordered that proceedings in the case be suspended. Costs of appeal are assessed against plaintiff.